[Cite as *State v. Johnson*, 2019-Ohio-4613.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo          Court of Appeals No. L-18-1214

         Appellee          Trial Court Nos. CRB-17-08262
                                             CRB-17-11859
                                             TRD-17-18511

v.

Jamar Johnson          **DECISION AND JUDGMENT**

         Appellant          Decided: November 8, 2019

* * * * *

David Toska, City of Toledo Chief Prosecutor, and Jimmie Jones,
Assistant Prosecutor, for appellee.

Adam H. Houser, for appellant.

* * * * *

**MAYLE, P.J.**

{¶ 1} Appellant, Jamar Johnson, appeals the January 7, 2019 judgment of the

Toledo Municipal Court sentencing him for misdemeanor convictions of menacing,

domestic violence, and operating a motor vehicle without a valid license. For the following reasons, we affirm.

## I. Background and Facts

{¶ 2} This appeal involves Johnson's misdemeanor convictions in three cases.[1] In the first, case No. CRB-17-08262-0101, Johnson was charged by complaint on July 6, 2017, with menacing in violation of R.C. 2903.22(A), a fourth-degree misdemeanor. In the second case, case No. CRB-11859-0303, Johnson was charged by complaint on September 22, 2017, with domestic violence in violation of R.C. 2919.25(C), a fourth-degree misdemeanor. And in the third case, case No. TRD-17-18511-0102, Johnson was charged by uniform traffic ticket on August 21, 2017, with operating a motor vehicle without a valid license in violation of R.C. 4510.12. The traffic ticket does not include the degree of the misdemeanor with which Johnson was charged or indicate that Johnson had any prior R.C. 4510.12 offenses.

{¶ 3} On September 12, 2018, the trial court held a combined plea and sentencing hearing. The city indicated that the parties had reached a resolution of Johnson's cases, with Johnson agreeing to plead to one count of menacing, one count of domestic violence, and one count of operating a motor vehicle without a valid license. The court also indicated that it would be addressing two outstanding probation violations. At the hearing, defense counsel stated that "we'd enter no contest plea, consent to finding, waive

---

[1] Johnson included six case numbers in his notice of appeal, but three of the case numbers relate to charges that were dismissed. Johnson does not assign any errors related to the dismissed charges, so we will not consider them.

2.

reading, call for explanation of circumstances. Consent that there is a factual basis to make a finding of guilt and waive recitation of evidence into the record."

{¶ 4} When the court addressed Johnson, it explained the potential penalties for all of the pending charges. Regarding the R.C. 4510.12 violation, the court stated, "that is a no operator's license, but because there is prior offenses, it is a misdemeanor of the first degree * * *. You understand that; correct?" Johnson said that he understood. The court also explained the constitutional rights that Johnson was giving up by pleading no contest. Johnson indicated that he understood each right.

{¶ 5} Following Johnson's pleas of no contest, the trial court found him guilty of menacing, domestic violence, and operating a motor vehicle without a valid license. The court also found Johnson guilty of two probation violations.[2]

{¶ 6} The court proceeded to sentencing. After hearing from Johnson's attorney, the court noted that Johnson and the judge "have a history" and that Johnson's record was 15 pages long, he owed $8,512 in fines and court costs (which had been accumulating for more than a decade), and had 218 failures to appear in the municipal court. The court found that "That is outrageous. You have absolutely no respect for this court or the law. Your behavior is not tolerable. Given all of that information and the fact that you continue to commit the same crimes over and over again, I believe that consecutive

---

[2] Johnson did not include the cases related to the probation violations in his notice of appeal. Thus, those cases are not before us.

3.

sentences are appropriate here." The court then sentenced Johnson on the two probation violations, ordering the sentences to be served "consecutive," but not specifying what the jail terms were consecutive to.

{¶ 7} The court next moved to the R.C. 4510.12 conviction, imposing "180 days consecutive," again, without specifying what those days were consecutive to. At this point, Johnson asked to address the court, claiming that he was "scared for my life" because the trial judge had previously "placed [Johnson] in jail for no apparent reason." He went on to claim that he was "over-sentenced" on a prior occasion, he was never arraigned on a traffic case, he spoke to a probation officer who told him there was no probation violation and that he had "bigger worries," he "honestly didn't even want to go forward with this," he had received a probation violation for taking medicine prescribed for a broken hand, he ended up on a $300,000 bond while he was in the hospital even though he "was no longer in [the electronic-monitoring department's] authority," and the victim of the domestic violence charge was using a "fake Social Security Number [sic]." Johnson also asked the trial judge to recuse himself, which the court denied as "an unreasonable request."

{¶ 8} After hearing Johnson's statement, the trial court sentenced him to 180 days in jail on the R.C. 4510.12 charge, which the court said was "going to be a consecutive sentence. * * * So that's about one year in jail." For the menacing charge, the trial court sentenced Johnson to 30 days in jail, which the court suspended, and 18 months on probation. And on the domestic violence charge, the court sentenced Johnson to 30 days

4.

in jail, which the court suspended, 18 months on probation, a no-contact order with the victim, completion of a batterer's intervention program, and $500 in restitution.

{¶ 9} Immediately after the court imposed the domestic violence sentence, Johnson asked "How do I go about withdrawing my plea, Your Honor?" to which the court responded, "I am going to deny your request to withdraw your plea." When Johnson asked why, the court replied, "Because we went through the entire process very carefully. You clearly stated that you understood your rights. You clearly understood that I was going to make a finding of guilty upon a plea of no contest, and I did make that finding. The fact that you're unhappy with the sentence does not require me to withdraw your plea." Johnson started to reply, "It's not that I'm unhappy with the sentence, Your Honor—," but was cut off by the court informing him of his right to appeal.

{¶ 10} Johnson now appeals the trial court's sentence, raising four assignments of error:

     I. THE COLLOQUY IN CASE TRD-17-18511 WAS INSUFFICIENT TO SUPPORT A FINDING OF GUILT ON A FIRST-DEGREE MISDEMEANOR

     II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO WITHDRAW HIS PLEA WITHOUT FIRST HOLDING A HEARING

     III. APPELLANT'S PLEA WAS NOT VOLUNTARY BECAUSE IT IS THE RESULT OF INEFFECTIVE ASSISTANCE OF COUNSEL

5.

IV.  AMBIGUOUS SENTENCE

## II.  Law and Analysis

### A.  Johnson invited any error related to the R.C. 4510.12 charge.

{¶ 11} In his first assignment of error, Johnson argues that the trial court erred by finding him guilty of a first-degree misdemeanor violation of R.C. 4510.12, instead of an unclassified-misdemeanor violation, because the complaint in that case—i.e., the uniform traffic ticket—is devoid of the information necessary to find him guilty of the higher-degree crime.  The city responds that Johnson was properly convicted of a first-degree misdemeanor because the trial court took judicial notice of Johnson's prior conviction and mentioned on the record that Johnson had a prior offense.

{¶ 12} As an initial matter, we note that the charge of operating a motor vehicle without a valid license is a violation of a traffic ordinance, so the Ohio Traffic Rules (rather than the Ohio Rules of Criminal Procedure) apply to this charge.  *State v. Watkins*, 99 Ohio St.3d 12, 2003-Ohio-2419, 788 N.E.2d 635, ¶ 10; Traf.R. 2(A) (defining a "traffic case" as "any proceeding, other than a proceeding resulting from a felony indictment, that involves one or more violations of a law, ordinance, or regulation governing the operation and use of vehicles * * *.").

{¶ 13} "A defendant may plead not guilty, guilty or, with the consent of the court, no contest."  Traf.R. 10(A); *see also* Crim.R. 11(A).  A no contest plea "is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the

6.

complaint * * *." Traf.R. 10(B)(2); *see also* Crim.R. 11(B)(2). In traffic cases, the complaint and summons is the Ohio Uniform Traffic Ticket, which is filed by a law enforcement officer. Traf.R. 3(A).

{¶ 14} Under R.C. 2937.07,

> A plea to a misdemeanor offense of "no contest" or words of similar import shall constitute an admission of the truth of the facts alleged in the complaint and that the judge or magistrate may make a finding of guilty or not guilty from the explanation of the circumstances of the offense.

The "explanation of the circumstances" is a "procedural protection" that "allows a judge to find a defendant not guilty or refuse to accept his plea when the uncontested facts [in the complaint] do not rise to the level of a criminal violation." *City of Girard v. Giordano*, 155 Ohio St.3d 470, 2018-Ohio-5024, 122 N.E.3d 151, ¶ 18-19. A defendant can waive the requirement of an explanation of circumstances. *State/City of Toledo v. Neal*, 6th Dist. Lucas No. L-17-1193, 2018-Ohio-2596, ¶ 14.

{¶ 15} When the defendant waives an explanation of circumstances, the trial court must make a determination about the defendant's guilt based solely on the facts alleged in the complaint. *Id.* at ¶ 17. If, however, "the explanation of circumstances has been waived but the facts as alleged in the complaint are nonetheless insufficient to establish each element of the offense, a conviction based on nothing more than the complaint lacks sufficient evidence." *Id.* Regardless, if the defendant's waiver of the explanation of circumstances also includes an explicit statement that he "consents to a finding of guilty"

7.

or expressly stipulates that the facts in the complaint provide an "actual" or "sufficient" basis for a finding of guilty, the defendant cannot argue on appeal that his conviction is based on insufficient evidence because he invited the error. *Id.* at ¶ 18. "That is because, by making such explicit statements, the defendant goes beyond a bare admission of the facts of the complaint and admits that the facts, as alleged, are sufficient to establish guilt." *Id.*

{¶ 16} Here, Johnson's counsel said during the plea hearing that Johnson "*[c]onsent[s] that there is a factual basis to make a finding of guilt* and waive[s] recitation of evidence into the record." (Emphasis added.) By agreeing that there was a factual basis upon which the trial court could convict Johnson of first-degree misdemeanor operating a motor vehicle without a valid license, Johnson invited any error related to the trial court finding him guilty on that charge, and he cannot now argue that his conviction was based on insufficient evidence. *Id.*; *see also State v. Kern*, 6th Dist. Lucas No. L-14-1173, 2015-Ohio-1988, ¶ 12. Accordingly, we find that Johnson's first assignment of error is not well-taken.

## B. The trial court properly denied Johnson's motion to withdraw his plea.

{¶ 17} In his second assignment of error, Johnson argues that the trial court was required to hold a hearing before ruling on his postsentence motion to withdraw his plea. The city responds that Johnson only sought to withdraw his plea because he was unhappy with his sentence, which is insufficient to show the required manifest injustice.

8.

{¶ 18} Under Crim.R. 32.1, a motion to withdraw a plea of guilty or no contest "may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." The trial court is not required to hold a hearing on a postsentence motion to withdraw a plea if the facts alleged by the defendant, even if accepted as true, do not demonstrate a reasonable likelihood that withdrawal of the plea is necessary to correct a manifest injustice. *State v. Harmon*, 6th Dist. Lucas No. L-10-1195, 2011-Ohio-5035, ¶ 13. "Manifest injustice" is a "clear or openly unjust act," *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998), that "relates to some fundamental flaw in the proceedings which result[s] in a miscarriage of justice or is inconsistent with the demands of due process." *State v. Williams*, 10th Dist. Franklin No. 03AP-1214, 2004-Ohio-6123, ¶ 5. It is an extremely high standard reserved only for extraordinary cases. *Harmon* at ¶ 12. The defendant has the burden of establishing the existence of manifest injustice. *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus. Generally speaking, a defendant's self-serving statements—without more—will not be sufficient to demonstrate manifest injustice. *State v. Passafiume*, 2018-Ohio-1083, 109 N.E.3d 642, ¶ 13 (8th Dist.).

{¶ 19} We will reverse a trial court's decision denying a motion to withdraw a plea only for an abuse of discretion. *Smith* at paragraph two of the syllabus. "A trial court will be found to have abused its discretion when its decision is contrary to law,

9.

unreasonable, not supported by the evidence, or grossly unsound." *State v. Nisley*, 3d Dist. Hancock No. 5-13-23, 2014-Ohio-981, ¶ 16, citing *State v. Boles,* 187 Ohio App.3d 345, 2010-Ohio-278, 932 N.E.2d 345, ¶ 16-18 (2d Dist.).

{¶ 20} In this case, Johnson did not file a written motion to withdraw his no-contest pleas, so we must determine his reasons for seeking to withdraw from the transcript of the plea and sentencing hearing. Johnson first voiced objections after the court imposed two consecutive sentences for probation violations in cases that are not part of this appeal. He claimed to be "scared for my life" because he was in front of that particular trial judge, presumably because Johnson claimed that the trial judge previously sent him to jail for three days "for no apparent reason." Johnson characterized this as him being "over-sentenced." Johnson went on to say that he was "scared for this to happen" and he "honestly didn't even want to go forward with this." Further, he objected to the handling of some probation violations and to the fact that "the EMU lady" violated him and got a bond of $300,000 set while Johnson was in the hospital. He also noted that the "inactive probation lady" told him that he did not violate probation by getting a traffic violation. Johnson then accused the domestic violence victim of using a fake social security number, which showed that the victim was lying in her police report. He concluded by asking the trial judge to recuse himself "because I am scared for my life in front of you."

{¶ 21} When the trial judge finished sentencing Johnson, Johnson immediately asked how to withdraw his pleas. The court denied the request because the court and

10.

Johnson went through the plea process carefully, Johnson "clearly stated" that he understood his rights and understood that the court was going to find him guilty if he entered no-contest pleas, and that Johnson's displeasure with the sentence was not a sufficient basis to allow Johnson to withdraw his plea.

{¶ 22} Based on the transcript, we cannot find that the trial court abused its discretion by summarily denying Johnson's motion to withdraw his pleas. Contrary to Johnson's claims, the transcript does not show that "he had, in effect, entered into the plea under duress." Although the trial court explained to Johnson that Johnson could receive jail time for each charge to which Johnson was pleading, it was not until the trial court actually imposed jail time that Johnson objected. It appears from the transcript that Johnson's primary objection was to serving jail time; there is no indication—beyond Johnson's postsentence statement that he "honestly didn't even want to go forward with this"—that Johnson sought to withdraw his plea because of "some fundamental flaw in the proceedings which result[s] in a miscarriage of justice or is inconsistent with the demands of due process." *Williams*, 10th Dist. Franklin No. 03AP-1214, 2004-Ohio-6123, at ¶ 5.

{¶ 23} Because Johnson has not met his burden of showing a manifest injustice, we find that the trial court did not abuse its discretion by denying Johnson's motion to withdraw his plea without a hearing. Johnson's second assignment of error is not well-taken.

11.

**C. Johnson's plea was not the result of ineffective assistance of counsel.**

{¶ 24} In his third assignment of error, Johnson contends that his plea was involuntary because it was the result of ineffective assistance of counsel. He argues that his attorney's incorrect statement that he was no longer on probation and could not be sentenced for a probation violation made his plea involuntary. The city counters that Johnson knew that he was still on probation, so there was no ineffective assistance of counsel.

{¶ 25} Again, we note that Johnson is not appealing the sentences related to the probation violations. Both probation violation sentences were entered in cases that are not listed in Johnson's notice of appeal. Thus, we consider this assignment of error only to the extent that it relates to the involuntary nature of Johnson's pleas of no contest to menacing, domestic violence, and operating a motor vehicle without a valid license.

{¶ 26} To prevail on a claim of ineffective assistance of counsel, an appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 689.

{¶ 27} To establish ineffective assistance of counsel, an appellant must show "(1) deficient performance of counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for

12.

counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688. In order to satisfy the "prejudice" element for an ineffective-assistance claim following a plea, "'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded [no contest] and would have insisted on going to trial.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 89, quoting *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

{¶ 28} In some cases, an attorney's incorrect legal advice can constitute ineffective assistance, but only when "an erroneous understanding of the applicable law induces a defendant's guilty plea * * *." *State v. Persons*, 4th Dist. Meigs No. 02CA6, 2003-Ohio-4213, ¶ 12; *see also State v. Engle*, 74 Ohio St.3d 525, 527-528, 660 N.E.2d 450 (1996); *State v. Atchley*, 10th Dist. Franklin No. 04AP-841, 2005-Ohio-1124, ¶ 11. That is, the attorney's erroneous advice must cause the defendant to be "misinformed as to a material term of the plea agreement * * *." *Persons* at ¶ 16. Additionally, to show that he was prejudiced, the defendant must demonstrate that he would not have pleaded if his attorney's advice had been correct. *State v. Xie*, 62 Ohio St.3d 521, 525, 584 N.E.2d 715 (1992).

{¶ 29} Here, Johnson cannot show that he was prejudiced by anything his trial attorney told him about his probation in an unrelated case. Notably, Johnson does not argue that he would not have pleaded no contest to menacing, domestic violence, and operating a motor vehicle without a valid license if he had known that he was still on

13.

probation, or make any arguments related to prejudice at all. Because Johnson has not shown that he was prejudiced, he cannot show that his plea was involuntary due to ineffective assistance of counsel. Accordingly, Johnson's third assignment of error is not well-taken.

### D. The trial court properly imposed consecutive sentences.

{¶ 30} Finally, in his fourth assignment of error, Johnson argues that his jail sentence is ambiguous because the sentencing entry does not state what other jail term the sentence for the R.C. 4510.12 violation is consecutive to. The state contends that the trial court properly imposed consecutive sentences because the court ordered the jail terms to be served consecutively at the time of sentencing.

{¶ 31} We review misdemeanor sentences for an abuse of discretion. *State v. Ostrander*, 6th Dist. Fulton No. F-10-011, 2011-Ohio-3495, ¶ 28.

{¶ 32} Under R.C. 2929.41(B)(1), "A jail term or sentence of imprisonment for a misdemeanor shall be served consecutively to any other prison term, jail term, or sentence of imprisonment *when the trial court specifies* that it is to be served consecutively * * *." (Emphasis added.) Unlike in a felony case, a trial court in a misdemeanor case is not required to make any specific findings before imposing consecutive sentences. *State v. Burley*, 2017-Ohio-378, 83 N.E.3d 322, ¶ 10 (7th Dist.).

{¶ 33} In Johnson's case, the trial court properly imposed consecutive sentences. It specified at the sentencing hearing and in its sentencing entry that the sentence for

14.

operating a motor vehicle without a valid license was to be served consecutively. Johnson does not argue that the trial court was required to do anything more to impose consecutive sentences.

{¶ 34} Moreover, Johnson's arguments related to an ambiguity in the sentencing entry are misplaced. "A trial court does not err by not expressly setting forth the order for service of consecutive sentences as there are statutes and rules that govern the order of how sentences are to be served." *State v. Mundy*, 9th Dist. Medina No. 15CA0001-M, 2016-Ohio-4685, ¶ 13. Ambiguity becomes an issue when the defendant suffers some prejudice resulting from the order of his sentences. *See State v. McBride*, 11th Dist. Trumbull No. 2016-T-0006, 2017-Ohio-891, ¶ 15-17. Johnson does not argue that he has suffered any prejudice because of the trial court's sentencing order.

{¶ 35} Further, Johnson relies on a case that is distinguishable. In *State v. Carr*, 167 Ohio App.3d 223, 2006-Ohio-3073, 854 N.E.2d 571 (3d Dist.), the trial court did not mention at the sentencing hearing that any of the defendant's three convictions were to be served consecutively. *Id.* at ¶ 2. Nor did the court order consecutive service in any of the three sentencing entries. *Id.* Later, the trial court issued amended sentencing entries ordering two of the cases to be served consecutively. *Id.* The Third District held that the trial court lost jurisdiction to amend its sentences once they had been executed (i.e., when the defendant began serving his jail terms), so the amended entries were insufficient to impose consecutive sentences. *Id.* at ¶ 3. The court went to find that the trial court's

failure to specify at sentencing or in the original entries that the sentences were consecutive created an ambiguity that had to be resolved in the defendant's favor. *Id.* at ¶ 4.

{¶ 36} In this case, however, the trial court did, in fact, specify both at the sentencing hearing and in its sentencing entry that Johnson's sentence for operating a motor vehicle without a valid license was to be served consecutively. Thus, *Carr* is inapposite.

{¶ 37} Johnson's fourth assignment of error in not well-taken.

### III. Conclusion

{¶ 38} For the foregoing reasons, the January 7, 2019 judgment of the Toledo Municipal Court is affirmed. Johnson is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Arlene Singer, J. _____

_____
JUDGE

Christine E. Mayle, P.J. _____

Gene A Zmuda, J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.